

**U.S. Department of Justice**
*United States Attorney*
*District of New Jersey*

---

*Courtney A. Howard*
*Assistant United States Attorney*

*970 Broad Street, Suite 700*      *Direct Dial: (973) 645-2859*
*Newark, New Jersey 07102*        *Courtney.Howard@usdoj.gov*

May 8, 2020

**BY ECF AND EMAIL**

The Honorable Madeline Cox Arleo
United States District Judge
Martin Luther King, Jr. Fed. Bldg & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07101

   Re: <u>*United States v. Gary Basralian*</u>, Crim. No. 18-515

Dear Judge Arleo:

  Defendant Gary Basralian moves this Court for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). Defendant seeks to reduce his sentence of 70 months' imprisonment by over 90% due to the Covid-19 pandemic. To date, Basralian has served only 5 months and 22 days of his 70-month sentence.

  The Court should deny the motion. *First*, as an initial matter, because Basralian has filed a notice of appeal challenging his sentence, this Court now lacks jurisdiction to modify it. *Second*, this Court should deny the request for compassionate release without prejudice for Basralian's failure to exhaust administrative remedies. *Third*, to the extent Basralian is asking this Court to transfer him to home confinement for some or all of the remaining term of imprisonment, only the Bureau of Prisons ("BOP") can grant that form of relief, and it has already denied Basralian's request for transfer to home confinement. *Finally*, once Basralian has exhausted his administrative remedies, the Government will explain why this Court should deny a reduction of sentence on the merits, unless this Court would prefer to consider the merits sooner.

  I. **Background**

  On August 29, 2018, Basralian pled guilty before Your Honor to a two-count Information charging him with wire fraud, in violation of Title 18, United States Code, Section 1343, and investment advisor fraud, in violation of Title 15, United States Code, Sections 80b-6 and 80b-17. Basralian did so because he was a trusted investment advisor who had stolen over $3.7 million from at least

1

10 of his clients over the course of 10 years. He used the money to fund his own lifestyle. Basralian's blatant and calculated lies caused financial and personal devastation to his victims and their families—some of whom lost their life savings, their retirement funds, or both.

At the September 6, 2019 sentencing hearing, the Government sought a 97-month sentence—the top of the applicable Guidelines range. This Court sentenced Basralian to 70-months in prison. Basralian filed a timely notice of appeal on September 10, 2019. Dkt. No. 22. Although this Court ordered Basralian to self-surrender to BOP on October 11, 2019, at his request, the Government consented to extending his surrender date to November 18, 2019, which the Court then ordered. Dkt. No. 27. He later sought another extension of his surrender date, which this Court denied. Dkt. No. 28.

Basralian reported to FCI Fort Dix to begin serving his sentence on November 18, 2019, where BOP placed him in the minimum security satellite camp. So far, he has served only 5 months and 22 days of his 70-month sentence. According to BOP, all inmates at the camp at FCI Fort Dix were tested for COVID-19, and while he tested positive, as of May 7, 2020, Basralian was not showing any symptoms. Meanwhile, he has yet to file his opening brief in his appeal. Nor has he asked the Court of Appeals for a limited remand under Federal Rule of Appellate Procedure 12.1.

II. **Analysis**

a. **The Court should deny the motion based on the Court's lack of jurisdiction due to Defendant's pending appeal.**

"The filing of a notice of appeal is an event of jurisdictional significance [that] confers jurisdiction on the court of appeals and divests the district court of its control *over those aspects of the case involved in the appeal.*" *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) (per curiam) (emphasis added). Here, Basrailian has filed a timely notice of appeal challenging his sentence. Dkt. No. 22. That effectively deprives this Court of jurisdiction over any matter relating to Basralian's sentence, including his present request for a reduction of sentence. *See United States v. Davis*, 924 F.3d 501, 504 (3d Cir. 1999) (district court lacks jurisdiction to change a sentence after the filing of a notice of appeal where the appeal challenges the defendant's sentence).

Under these circumstances, Federal Rule of Criminal Procedure 37(a) affords this Court three options. This Court can: (1) defer consideration of Basralian's motion; (2) deny the motion; or (3) "state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." F.R.C.P. 37. The Government submits that option 2 is the best course. Rather than defer the motion or issue an "indicative ruling,"

the Court should acknowledge that it lacks jurisdiction to modify Basralian's sentence, deny it on these grounds, and allow the appellate process to play out.

b. **The Court should deny the motion without prejudice for Defendant's failure to exhaust administrative remedies.**

Even if this Court were to address Basralian's request under 18 U.S.C. § 3582(c)(1)(A), his motion suffers from additional defects. Under § 3582(c)(1)(A), this Court may, in certain circumstances, grant a defendant's motion to reduce his or her term of imprisonment. Before filing that motion, however, the defendant must first request that BOP file such a motion on his or her behalf. A court may grant the defendant's own motion for a reduction in his sentence *only* if the motion was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after 30 days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

Here, Basralian has not requested a reduction in sentence from BOP. According to BOP, he requested transfer to home confinement, not a reduction in sentence. (*See* Defendant's Motion, Exhibit A; *see also* Exhibit 1 (Request for Home Confinement), attached.)  BOP reports that it denied Basralian's request for home confinement on April 26, 2020. Requests for transfer to home confinement rely upon different statutory provisions than § 3582(c)(1)(A): 18 U.S.C. § 3624(c)(2), as modified by the CARES Act, or, for elderly or terminally ill inmates, 34 U.S.C. § 60541(g). That means, as Chief Judge Wolfson explained in the letter opinion attached as Exhibit 2, a request for transfer to home confinement cannot satisfy § 3582(c)(1)(A)'s exhaustion requirement. So Basralian's recourse under § 3582(c)(1)(A) is to present his request for a reduction of sentence first to the Warden of FCI Fort Dix, so that BOP can evaluate his current circumstances in light of the new COVID-19 concerns. Accordingly, this Court should not consider his motion for a reduction of sentence until, as the statute provides, BOP denies the request and Basralian fully exhausts his administrative appeals, or 30 days have passed since he presented his request to the Warden, whichever is earlier.

Contrary to Basralian's assertion, the requirement that he either exhaust administrative appeals or wait 30 days after presenting a request to the warden before seeking judicial relief is mandatory and must be enforced by the Court. As the Third Circuit recently confirmed, where 30 days have not passed following presentation of a request to a warden, the statute "presents a glaring roadblock foreclosing compassionate release at this point." *United States v. Raia*, 954 F.3d 594, at *2 (3d Cir. 2020). The vast majority of district courts to address this issue agree. *See, e.g., United States v. Epstein*, Crim. No. 14-287 (FLW), 2020 WL 1808616, at *4 (D.N.J. Apr. 9, 2020) (citing numerous cases); *see* App'x A (list of decisions).

"'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010). As the Supreme Court has recognized, finality is an important attribute of criminal judgments, and one "essential to the operation of our criminal justice system." *Teague v. Lane*, 489 U.S. 288, 309 (1989) (plurality opinion). Accordingly, once a district court has pronounced sentence and the sentence becomes final, the court has no inherent authority to reconsider or alter that sentence. Rather, it may do so only if authorized by statute. *See, e.g.*, *United States v. Addonizio*, 442 U.S. 178, 189 & n.16 (1979); *United States v. Washington*, 549 F.3d 905, 917 (3d Cir. 2008); *United States v. Smartt*, 129 F.3d 539, 540 (10th Cir. 1997) ("A district court does not have inherent authority to modify a previously imposed sentence; it may do so only pursuant to statutory authorization.") (internal quotation marks omitted).

Consistent with that principle of finality, § 3582(c) provides that a court generally "may not modify a term of imprisonment once it has been imposed," except in three circumstances: (i) upon a motion for reduction in sentence under § 3582(c)(1)(A); (ii) "to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure," § 3582(c)(1)(B); and (iii) where the defendant was sentenced "based on" a retroactively lowered sentencing range, § 3582(c)(2). Given the plain language and purpose of the statute, the requirements for filing a sentence-reduction motion—including the requirement that a defendant exhaust administrative remedies or wait 30 days before moving in court for a reduction—are properly viewed as jurisdictional.

Section 3582(c) states that a "court may not modify" a term of imprisonment except in enumerated circumstances. 18 U.S.C. § 3582(c). It thus "speak[s] to the power of the court rather than to the rights or obligations of the parties," *Landgraf v. USI Film Prods.*, 511 U.S. 244, 274 (1994) (internal quotation marks omitted), delineating "when, and under what conditions," a court may exercise its "'adjudicatory authority,'" *Bowles v. Russell*, 551 U.S. 205, 212-13 (2007) (quoting *Eberhart v. United States*, 546 U.S. 12, 16 (2005) (per curiam)). That conclusion is reinforced by the historical powerlessness of the courts to modify a sentence after the expiration of the term at which it was entered. *See United States v. Mayer*, 235 U.S. 55, 67-69 (1914); *United States v. Welty*, 426 F.2d 615, 617-618 & n.8 (3d Cir. 1970). Section 3582(c) accordingly has been understood as conferring the jurisdictional authority that previously was lacking by providing express statutory authorization to modify otherwise final sentences.

In recent years, the Supreme Court has cautioned against imprecise use of the "jurisdictional" label, and explained that a statutory claim-processing rule, even if mandatory, is presumed to be nonjurisdictional absent a clear statement to the contrary. *See Fort Bend County v. Davis*, 139 S. Ct. 1843, 1848-50 (2019). A prescription is not jurisdictional merely because "it 'promotes important

4

congressional objectives,'" *id.* at 1851 (quoting *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 169 n.9 (2010)), and courts should not deem jurisdictional rules that "seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times," *Henderson v. Shinseki*, 562 U.S. 428, 435 (2011). But whether a prescription is jurisdictional turns on Congress's intent, which is properly determined by the text, context, relevant historical treatment, and purpose of the provision. *Henderson*, 562 U.S. at 436. Here, the relevant factors indicate that § 3582(c) sets forth a jurisdictional limitation on a district court's authority to modify a sentence, such that a district court lacks jurisdiction to consider a motion for a sentence reduction where the defendant has failed to satisfy the exhaustion requirement of § 3582(c)(1)(A).

While the Government maintains that the time limitation in § 3582(c)(1)(A) is jurisdictional, given that it stands as an exception to the historic and fundamental rule that courts may not revisit a final criminal judgment, the point is ultimately academic. Even if the exhaustion requirement of § 3582(c)(1)(A) is not jurisdictional, it is at least a mandatory claim-processing rule and must be enforced if a party "properly raise[s]" it. *Eberhart*, 546 U.S. at 19 (holding that Fed. R. Crim. P. 33, which permits a defendant to move for a new trial within 14 days of the verdict, is a nonjurisdictional but mandatory claim-processing rule). The Government raises the rule here, and it must be enforced.[1]

Basralian nevertheless argues that this Court may ignore the exhaustion requirement in light of the crisis presented by the coronavirus pandemic. That is incorrect. While judicially created exhaustion requirements may sometimes be excused, a court cannot ignore a statutory command such as that presented in § 3582(c)(1)(A). *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) ("[w]here Congress specifically mandates, exhaustion is required"). The Supreme Court recently reaffirmed that principle in *Ross v. Blake*, 136 S. Ct. 1850 (2016), which rejected a judicially created "'special circumstances'" exception to a statutory exhaustion requirement. Rejecting the "freewheeling approach" adopted by some courts of appeals, under which some prisoners were permitted to pursue litigation even when they had failed to exhaust available administrative remedies, *Ross*, 136 S. Ct. at 1855, the Court demanded fidelity to the statutory text, explaining that the "mandatory language" of the exhaustion requirement "means a court may not excuse a failure to exhaust" even to accommodate exceptional circumstances, *id.* at 1856.

---

[1] Indeed, even those courts that have concluded that the requirements of § 3582(c)(2) are not jurisdictional still enforce the statutory prerequisites to relief. *See, e.g., United States v. Taylor*, 778 F.3d 667, 670 (7th Cir. 2015) (recognizing that even if a court has the "power to adjudicate" a motion under § 3582(c)(2), it may lack "authority to *grant* a motion . . . because the statutory criteria are not met") (emphasis in original).

Some have suggested that the exhaustion requirement of § 3582(c)(1)(A) may be excused by a court as "futile" during the present pandemic. But there is no "futility" exception, as the Supreme Court has made clear that courts have no authority to invent an exception to a statutory exhaustion requirement. *See, e.g.*, *United States v. Holden*, 2020 WL 1673440, at *5 (D. Or. Apr. 6, 2020) (explaining why that is so). Although a handful of courts, mostly in the Second Circuit, have agreed in recent weeks that the exhaustion requirement may be negated, *see, e.g.*, *United States v. Haney*, 2020 WL 1821988 (S.D.N.Y. Apr. 13, 2020), that is not the rule in the Third Circuit, where *Raia* controls, and virtually every other district court in the country to consider this issue in a reported decision agrees with *Raia* and the Government here that the 30-day requirement must be enforced. *See* App'x A. As *Raia* held, "[g]iven BOP's shared desire for a safe and healthy prison environment, ... strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance." *Raia*, 2020 WL 1647922, at *2.

Moreover, several of the decisions incorrectly excusing the § 3582 exhaustion requirement as futile have rested on the fact that the defendant had only days left to serve on the prison sentence. *See, e.g., United States v. McCarthy*, 2020 WL 1698732 (D. Conn. Apr. 8, 2020) (26 days remaining); *United States v. Colvin*, 2020 WL 1613943, at *1 (D. Conn. Apr. 2, 2020) (11 days remaining); *United States v. Perez*, 2020 WL 1546422, at *1 (S.D.N.Y. Apr. 1, 2020) (less than 21 days remaining). That is not the case here. At least one of those decisions also incorrectly relied on precedent addressing a judicially created—as opposed to statutorily created—exhaustion requirement. *See Perez*, 2020 WL 1546422 at *2 (relying only on *Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019)).[2] The requirement of a 30-day period to afford BOP the initial review of Basrailian's request (whenever he finally makes it) therefore cannot be excused.

In any event, a request in this context is not futile, because, as explained further below, BOP fully considers requests for sentence reductions. Indeed, BOP often concurs with such requests. During the period from the passage of the

---

[2] To the extent *Perez* suggests that *Mathews v. Eldridge*, 424 U.S. 319 (1976), supports an exception to the exhaustion requirement here, *see* 2020 WL 1546422, at *2 n.2, that is incorrect. In *Eldridge*, the claimant complied with the "nonwaivable and nonexcusable requirement that an individual present a claim to the agency before raising it in court." *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 16 (2000). And while *Eldridge* recognized that a constitutional challenge "entirely collateral to [the claimant's] substantive claim of entitlement" might evade a statutory exhaustion requirement, 424 U.S. at 330, that is the case here. *See also United States v. Demaria*, 2020 WL 1888910, at *3 & n.8 (S.D.N.Y. Apr. 16, 2020) (explaining the *Perez* error at length and the inapplicability of the cases on which it relied).

First Step Act on December 21, 2018, until mid-March 2020 (before the coronavirus crisis began), BOP consented to a reduction in sentence in 55 cases.

While Congress indisputably acted in the First Step Act to expand the availability of compassionate release, it expressly imposed on inmates the requirement of initial resort to administrative remedies. And this is for good reason: BOP conducts an extensive assessment for such requests. *See* 28 C.F.R. § 571.62(a); BOP Program Statement 5050.50, Compassionate Release/ Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g), *available at* https://www.bop.gov/policy/progstat/ 5050_050_EN.pdf. As the Procedures reflect, the BOP completes a diligent and thorough review, with considerable expertise concerning both the inmate and the conditions of confinement. Its assessment will always be of value to the parties and the Court.

That is especially true during the current crisis. BOP must balance a host of considerations in deciding whether to release an inmate to recommend a reduction in an inmate's sentence or grant the inmate home confinement—not only the health of the inmate and BOP staff, but also the safety of the public. BOP is best positioned to determine the proper treatment of the inmate population as a whole, taking into account both individual considerations in light of on an inmate's background and medical history and more general considerations regarding the conditions and needs at particular facilities. The provision of § 3582(c)(1)(A) prioritizing administrative review therefore makes sense not only in the ordinary case, but also at this perilous time. *See United States v. McCann,* 2020 WL 1901089, at *2 (E.D. Ky. Apr. 17, 2020) ("The Court recognizes that these are unsettling times for everyone, including prisoners. But in such a context, the exhaustion requirement of the compassionate release statute is perhaps most important.").

Accordingly, this Court should deny Basralian's motion without prejudice to refiling once he fully exhausts his administrative remedies.

c. **This Court Has No Authority to Direct the BOP to Place the Defendant in Home Confinement.**

Finally, were this Court to read Basralian's motion as a request to order BOP to place him on home confinement under the guidelines set forth in the Attorney General's March 26 and April 3, 2020 memoranda,[3] this Court should deny the request. District courts have no authority to direct BOP to place a defendant in home confinement. Rather, such designation decisions are committed solely to BOP's discretion. And here, the BOP has denied Basralian's request for transfer to home confinement.

---

[3] Memoranda available at: https://www.bop.gov/coronavirus/faq.jsp.

Once a sentence is imposed, BOP is solely responsible for determining an inmate's place of incarceration. *See* 18 U.S.C. § 3621(b); *Moore v. United States Att'y Gen.*, 473 F.2d 1375, 1376 (5th Cir. 1973) (per curiam); *see also McKune v. Lile*, 536 U.S. 24, 39 (2002) (plurality opinion) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."). A court has no authority to designate a prisoner's place of incarceration. *United States v. Voda*, 994 F.2d 149, 151-52 (5th Cir. 1993). Thus, as any request by Basralian to serve out the balance of his prison sentence in home confinement alters only the place of incarceration, not the actual term of incarceration, only BOP may grant or deny his request.

Moreover, a prisoner has no constitutional right to confinement in any particular place, including in home confinement. *See Sandin v. Conner*, 515 U.S. 472, 478 (1995) ("the Due Process Clause did not itself create a liberty interest in prisoners to be free from intrastate prison transfers."); *Meachum v. Fano*, 427 U.S. 215, 224 (1976) ("The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in *any* of its prisons."). And Section 3582(c)(1)(A) permits only a reduction in "the term of imprisonment," not a change in the place of imprisonment. Home confinement merely permits the inmate to serve out the term of imprisonment at home. Such a request therefore falls outside § 3582(c)'s limited grant of authority to this Court to modify a sentence post-conviction. Absent any other statutory authority—and Basralian cites none—this Court has no authority to grant such relief in this forum.

## Conclusion

Accordingly, this Court should deny Basralian's motion because this Court lacks jurisdiction to consider it given the pendency of his direct appeal challenging his sentence, and because Basralian has not satisfied the exhaustion requirement in § 3582(c)(1)(A)'s.

Respectfully Submitted,

CRAIG CARPENITO
United States Attorney

BY:    COURTNEY A. HOWARD
Assistant United States Attorney

cc:    Tamra Katcher, Esq. (via email and ECF)
Sam Braverman, Esq. (via email and ECF)

8

## Appendix A

- *United States v. Gillis*, 2020 WL 1846792 (C.D. Cal. Apr. 9, 2020);

- *United States v. Meron,* 2020 WL 1873900 (E.D. Cal. Apr. 15, 2020);

- *United States v. Hembry*, 2020 WL 1821930 (N.D. Cal. Apr. 10, 2020);

- *United States v. Smith*, 2020 WL 1903160 (D. Conn. Apr. 17, 2020);

- *United States v. Perry*, 2020 WL 1676773 (D. Colo. Apr. 3, 2020);

- *United States v. Zywotko*, 2020 WL 1492900 (M.D. Fla. Mar. 27, 2020);

- *United States v. Read-Forbes*, 2020 WL 1888856 (D. Kan. Apr. 16, 2020);

- *United States v. Boyles*, 2020 WL 1819887 (D. Kan. Apr. 10, 2020);

- *United States v. Carter*, 2020 WL 1808288 (S.D. Ind. Apr. 9, 2020);

- *United States v. Hofmeister*, 2020 WL 1811365, at *3 (E.D. Ky. Apr. 9, 2020) (explaining that the rule is jurisdictional, and perhaps even more necessary during COVID-19 crisis);

- *United States v. Reeves*, 2020 WL 1816496 (W.D. La. Apr. 9, 2020);

- *United States v. Lugo*, 2020 WL 1821010, at *3 (D. Me. Apr. 10, 2020) (extensive analysis, concluding, "The Court regards the language of section 3582(c) as both clear and mandatory.");

- *United States v. Johnson*, 2020 WL 1663360, at *3-*6 (D. Md. Apr. 3, 2020) (concluding in lengthy discussion that § 3582(c)(1)(A)'s exhaustion requirement is jurisdictional and, regardless, there are no exceptions to the exhaustion requirement);

- *United States v. Underwood*, 2020 WL 1820092 (D. Md. Apr. 10, 2020);

- *United States v. Carden*, 2020 WL 1873951 (D. Md. Apr. 15, 2020);

- *United States v. Alam*, 2020 WL 1703881 (E.D. Mich. Apr. 8, 2020);

- *United States v. Mathews*, 2020 WL 1873360 (E.D. Mich. Apr. 15, 2020);

- *United States v. Annis*, 2020 WL 1812421, at *2 (D. Minn. Apr. 9, 2020) (Tunheim, C.J.) ("There is no question that COVID-19 is a cause for alarm, and the Court does not fault Annis's concerns, given his health conditions. However, given the scale of the COVID-19 pandemic and the complexity of

the situation in federal institutions, it is even more important that Annis first attempt to use the BOP's administrative remedies.");

- *United States v. Gardner*, 2020 WL 1867034 (D. Minn. Apr. 14, 2020);

- *United States v. Eisenberg*, 2020 WL 1808844 (D.N.H. Apr. 9, 2020);

- *United States v. Ogarro*, 2020 WL 1876300, at *3 (S.D.N.Y. Apr. 14, 2020) (lengthy analysis, stating, "In fact, section 3582(c)'s exhaustion proscription is clear as day.");

- *United States v. Pereyra-Polanco*, 2020 WL 1862639 (S.D.N.Y. Apr. 14, 2020);

- *United States v. Roberts*, 2020 WL 1700032 (S.D.N.Y. Apr. 8, 2020);

- *United States v. Woodson*, 2020 WL 1673253 (S.D.N.Y. Apr. 6, 2020);

- *United States v. Weiland*, 2020 WL 1674137 (S.D.N.Y. Apr. 6, 2020);

- *United States v. Rabadi*, 2020 WL 1862640, at *3 (S.D.N.Y. Apr. 14, 2020) (follows "vast majority" of courts);

- *United States v. Schultz*, 2020 WL 1872352 (W.D.N.Y. Apr. 15, 2020);

- *United States v. Allen*, 2020 WL 1878774 (N.D. Ohio Apr. 15, 2020);

- *United States v. Simmons*, 2020 WL 1903281 (D. Or. Apr. 17, 2020);

- *United States v. Holden*, 2020 WL 1673440 (D. Or. Apr. 6, 2020) (very extensive discussion);

- *United States v. Epstein*, 2020 WL 1808616 (D.N.J. Apr. 9, 2020) (cites numerous cases in agreement);

- *United States v. Petrossi*, 2020 WL 1865758 (M.D. Pa. Apr. 14, 2020);

- *United States v. Feiling*, 2020 WL 1821457 (E.D. Va. Apr. 10, 2020);

- *United States v. Fuller*, 2020 WL 1847751 (W.D. Wash. Apr. 13, 2020);

- *United States v. Carver*, 2020 WL 1604968 (E.D. Wash. Apr., 1, 2020);

- *United States v. Fevold*, 2020 WL 1703846, at *1 (E.D. Wis. Apr. 8, 2020) ("Not only is exhaustion of administrative remedies required as a matter of law, but it also makes good policy sense. The warden and those in charge of inmate health and safety are in a far better position than the sentencing court to know the risks inmates in their custody are facing and the

10

facility's ability to mitigate those risks and provide for the care and safety of the inmates.").

# EXHIBIT 1

*Copy*

BP-A0148
JUNE 10

INMATE REQUEST TO STAFF CDFRM

U.S. DEPARTMENT OF JUSTICE                     FEDERAL BUREAU OF PRISONS

| TO:(Name and Title of Staff Member) *WARDEN DAVID ORTIZ* | DATE: *4-5-2020* |
|---|---|
| FROM: Gary Basralian | REGISTER NO.: 71610-050 |
| WORK ASSIGNMENT: *CAMP LIBRARIAN* | UNIT: *CAMP -B* |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary.  Your failure to be specific may result in no action being
taken.  If necessary, you will be interviewed in order to successfully respond to your
request.

"COVID-19 Crisis-Vulnerable/AT-RISK/Non-Violent Offender Petition for Immediate
Release to Home Confinement"

(See attached Petition)

(Do not write below this line)

DISPOSITION:

| Signature Staff Member | Date |
|---|---|

Record Copy - File; Copy - Inmate

PDF                        Prescribed by P5511

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

CERTIFICATE OF SERVICE

I, Gary Basralian, hereby certify that a copy of the foregoing petition has been served upon my case manager, Counselor for Ft. Dix Camp, the Warden David Ortiz, and upon Attorney General William Barr, BOP Director Michael Carvajal by depositing depositing a copy of the same in the Prisoner-US Mail Box, first class, postage prepaid, addressed as follows:

The Honorable William P. Barr
Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC 20530

David E. Ortiz
FCI Fort Dix Warden
P.O. Box 38
Joint Base MDL, NJ 08640

Mr. Michael Carvajal
Director
Federal Bureau of Prisons
320 First Street N.W.
Washington, DC 20534

Gary Basralian                    Date: 4-5-2020

Gary Basralian
#71610-050
FCI Ft. Dix Camp
P.O. Box 2000
Joint Base MDL, NJ 08640

April 3, 2020

Mr. Michael Carvajal
Director
Federal Bureau of Prisons
320 First Street N.W.
Washington, DC 20534

David E. Ortiz
FCI Fort Dix Warden
P.O. Box 38
Joint Base MDL, NJ 08640

The Honorable William P. Barr
Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC 20530

RE: COVID-19 Crisis Vulnerable/ AT-RISK/ Non-Violent Prisoner Petition for
Immediate Release to Home Confinement

To: BOP Director Michael Carvajal, Warden David Ortiz, and Attorney General Barr

NOW COMES the Above inmate and petitions the BOP Director, the Warden and the
Attorney General, for immediate release to home confinement, pursuant to the
guidelines announced by Attorney General Barr on 3/25/2020, for the Immediate
Release of Vulnerable/At-RISK/Non-Violent Federal Prisoners due to the COVID-19
Virus Crisis. In support thereof, inmate states as follows:

Inmate is 72 years old

cont'd-

On 9/06/2019, inmate, was sentenced to 70 months for Wire and Investment adviser Fraud, he self surrendered  to Ft. Dix Camp, on 11/18/2019. He has no history of sex offenses.

Inmate has therefore, served appr. 5 months, or 10% of his net sentence.

The inmate would be eligible for Home confinement on October 7,2023.

Inmate suffers from the following conditions which, in addition to his age, make him More Vulnerable/ AT-Risk to serious consequences and Death from COVID-19 Virus:
Inmate has Cronic Coronary Artery Disease.
Inmate has Chronic Gastritus
Inmate has Scarred Lungs
Inmate has had Triple Heart By-pass surgery in April 2015
Inmate had a Aortic Valve replacement and severe arthritis in Both hands. The Inmate has been having difficulties breathing because the Fort Dix Facility has serious problems with Mold, Dust an germs.

Inmate, when released , will live with his Wife Soraya Vergara and will live in a single Family Home at Short Hills Club Village, 71 A Forest Drive, Springfield, NJ 07081.  She has lived at that address for well over 14 years.

The inmate has no disciplinary violations while at Ft. Dix and has been a Model Prisoner and has done extensive Re-entry classes in education, and continues with his 166 hours of monthly work programming.

The Inmate meets all the COVID-19 Crisis Vulnerable/AT-Risk Program guidelines outlined by the Attorney General by Memorandum to the BOP on March 26, 2020, then on April 3, 2020 Attorney General Barr directed the BOP to Immediately Review for Release to Home Confinement All At-Risk Inmates as per the Cares Act. Additionally, on March 19,2020, March 25, 2020 , on March 26, 2020, and March 30,2020 The Leaders of the Senate and House Judiciary- Senators Charles Grassley, Richard Durbin, Cory Booker, Kamala Harris and Congressman Hakeem Jefferies,

Jerrold Nadler and Karen Bass have urged the Attorney General and the BOP to
Release, Release At-Risk/Non-Violent offenders and have put forward the
"EMERGENCY COMMUNITY SUPERVISION ACT OF 2020" to Immediately place eligible
inmates- 50 years and older, Pregnant, Diabetes, congestive heart failure or
coronary disease, chronic lung disease or asthma, Immune system deficiencies such
as HIV-CANCER-Sickle Cell Anemia and Individuals who have 12 months or less to
serve on their sentence into Community Supervision and Home Confinement.

Wherefore, for the foregoing reasons, the above inmate requests Immediate Release
to Home Confinement.

Respectfully submitted,


Gary Basralian

# EXHIBIT 2

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
### (609) 989-2182

CHAMBERS OF
**FREDA L. WOLFSON**
CHIEF JUDGE

Clarkson S. Fisher Federal Building &
U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608

## LETTER ORDER

April 10, 2020

James Brendan Day, Esq.
Office of the United States Attorney
402 East State Street
Trenton, New Jersey 08608

Darren M. Gelber, Esq.
Wilentz, Goldman & Spitzer, P.A.
90 Woodbridge Center Drive
Woodbridge, New Jersey 07095

RE:     ***United States of America v. Tito Viteri*,
        <u>Criminal Action No. 19-44 (FLW)</u>**

Dear Counsel:

The above-referenced matter is before the Court on the motion of Defendant Tito Viteri ("Defendant") for compassionate release from imprisonment under the First Step Act ("FSA"), 18 U.S.C. § 3582(c)(1)(A). In his motion, Defendant requests that I modify his sentence and order his immediate release from the custody of the Bureau of Prisons ("BOP"), in light of the heightened risk to his health posed by the spread of the COVID-19 virus. The Government opposes the motion and posits that the Court lacks authority to act on Defendant's motion based on Plaintiff's failure to exhaust his administrative remedies with the BOP, as mandated by the FSA. Because the precise issues raised in Defendants' motion have recently been addressed by this Court[1] and are not

---

[1]     In *United States v. Epstein*, No. 14-cr-287, 2020 U.S. Dist. LEXIS 62833 (D.N.J. Apr. 9, 2020), I found that the Court lacked authority to grant an inmate's motion for compassionate release under Section 3582(c)(1)(A) due to COVID 19, because the inmate had not yet exhausted the necessary administrative requirements. In this case, Defendant has not provided any reason to

*(Footnote continued on next page.)*

complex, in lieu of a formal opinion, I render my decision in this Letter Order.  For the reasons discussed below, Defendant's motion is **denied** for failure to exhaust his administrative remedies; however, Defendant may renew his request upon exhaustion, if necessary.

On January 17, 2019, Defendant pled guilty to a single-count information, which charged him with tax evasion in violation of 26 U.S.C. § 7201.  (ECF Nos. 20, 22.)  On November 5, 2019, the Court sentenced Defendant to a term of imprisonment of 24 months.  (ECF Nos. 27, 28.) Defendant was also sentenced to 24 months of supervised release following his imprisonment, and he was ordered to pay more than $2 million in restitution to the Internal Revenue Service.  (*Id*.) Defendant is currently housed at the Federal Correctional Institution, Otisville Camp and, thus far, has served approximately 3 months of his sentence.

On April 9, 2020, Defendant filed the present motion for compassionate release.  (Def.'s Motion, ECF No. 29.)   In his motion, Defendant argues that the administrative exhaustion requirements of Section 3582(c)(1)(A) should be waived on the ground that compliance would be futile.  (*Id*. at 4-11.)   Defendant also argues that his medical conditions (episodic migraines, hypertension of the brain, anxiety, and asthma), and inability to protect himself against infection and probable death from COVID-19, which has taken place in Otisville, constitute "extraordinary and compelling reasons" for his release under the statute.  (*Id*. at 11-15.)  Because I find that Defendant has failed to exhaust the necessary administrative remedies under the Section 3582(c)(1)(A), which act as a bar to relief on this motion, I do not consider whether the circumstances of his confinement warrant his release.

Once a federally-imposed sentence commences, a district court has limited authority to modify that sentence.  *See Dillon v. United States*, 560 U.S. 817, 825 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances.") (quoting 18 U.S.C. § 3582(b)). One such authority for modifying a sentence is found in the recently-enacted First Step Act, which allows a defendant to be afforded compassionate release for "extraordinary and compelling reasons."  18 U.S.C. § 3582(c)(1)(A)(i).   The statute provides, in relevant part:

(c) Modification of an imposed term of imprisonment. The court may not modify a term of imprisonment once it has been imposed except that—

(1) in any case—

(A) the court, upon motion of the Director of the Bureau of Prisons, *or upon motion of the defendant after the defendant has fully exhausted all administrative rights* to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf *or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility*, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term

---

persuade me that he is on a different footing from the inmate in *Epstein*.  Accordingly, I apply much of the same reasoning from *Epstein* to this case.

of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction; or [. . .]

18 U.S.C. § 3582(c) (emphasis added). Simply put, under Section 3582(c)(1)(A), a defendant seeking a reduction in his term of imprisonment bears the burden of establishing both that he has satisfied (1) the procedural prerequisites for judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release. On this motion, my analysis focuses on the first prong of Section 3582(c)(1)(A).

Here, Defendant does not indicate that he has filed a request for compassionate release with the BOP, which would trigger the running of the 30-day exception to the exhaustion requirement. As such, I find that he has not exhausted the necessary administrative remedies required by Section 3582(c)(1)(A). Defendant, nonetheless, argues that I may exercise my discretion to waive the exhaustion requirement in light of the extraordinary crisis caused by the COVID-19 pandemic. As I explained in *Epstein*, the language of the Section 3582(c)(1)(A), and the relevant Third Circuit and Supreme Court precedents, dictate my conclusion that I lack the authority to waive exhaustion.

Section 3582(c)(1)(A) unambiguously instructs that a defendant can only bring a motion in the district court "after [he] has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c). This requirement is imposed by the statute itself. While judicially created exhaustion requirements may sometimes be excused, it is well settled that a court may not ignore a statutory command, such as the one imposed in Section 3582(c)(1)(A). *See Massieu v. Reno*, 91 F.3d 416, 419 (3d Cir. 1996) ("Although judicially developed exhaustion requirements might be waived for discretionary reasons by courts, statutorily created exhaustion requirements bind the parties and the courts."); *see also Ross v. Blake*, 136 S. Ct. 1850 (2016) (stating that "mandatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion."); *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) ("[W]e stress the point . . . that we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise").

The Third Circuit's recent decision in *United States v. Raia*, No. 20-1033, 2020 U.S. App. LEXIS 10582, at *5 (3d Cir. Apr. 2, 2020) reinforces the notion that the exhaustion requirements of Section 3582(c)(1)(A) are not susceptible to wavier by the courts. As in this case, the defendant in *Raia* filed a motion in the district court for immediate release under Section 3582(c)(1)(A) due to the COVID-19 virus. However, the district court refused to address the motion, citing its lack of jurisdiction as a result of a pending appeal of his sentence by the Government. The defendant, then, requested that the Third Circuit address his motion for release or remand the case to permit the district court to rule on his request for release. *Id.* at *4-5. The court declined to do so, noting, *inter alia*, that the defendant—who was 68 years old and suffered from Parkinson's Disease and diabetes—had failed to exhaust his remedies with the BOP under 18 U.S.C. § 3582(c)(1)(A). Notwithstanding defendant's age and medical issues, the Third Circuit found that the exhaustion requirement under the statute presented "a glaring roadblock foreclosing compassionate release at [that] point." *Id.* at *5-6. While *Raia* did not specifically address whether the FSA's exhaustion

requirement may be subject to judicially created exceptions, it is implicit in the circuit court's decision, since it refused to remand the case to the district court to consider the request for compassionate release, because "any remand would be futile," *id.* at *6, based upon the failure to exhaust. Indeed, the Third Circuit's strong language regarding exhaustion leaves no room for courts to waive that requirement.[2]

Lastly, Defendant refers the Court to a recent public announcement by the BOP. *See* Federal Bureau of Prisons COVID-19 Action Plan (April 5, 2020), *available at* https://www.bop.gov/resources/news/20200405_covid19_home_confinement.jsp (last visited April 10, 2020). In that announcement, the BOP notified the public that "it has begun immediately reviewing all inmates who have COVID-19 risk factors . . . to determine which inmates are suitable for home confinement." (*Id.*) The BOP further stated in the announcement that "[i]nmates do not need to apply to be considered for home confinement." (*Id.*) Defendant contends that, because the BOP is evaluating all inmates for possible transfer to home confinement, and that an inmate need not make a specific request for consideration for that relief, the statutory exhaustion requirement for compassionate release in 3582(c)(1)(A) no longer applies.

Defendant's argument lacks merit for several reasons. First, as the Government correctly notes in its response, the BOP's ongoing review of all inmates for possible discretionary release to home confinement is not being exercised under Section 3582(c)(1)(A), but rather under a different statute—specifically, 18 U.S.C. § 3624(c)(2), as modified by the recently-enacted Coronavirus Aid, Relief and Economic Security ("CARES") Act. *See* 18 U.S.C. § 3624(c)(2) ("The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months. The Bureau of Prisons shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph."); CARES Act, § 12003(b) ("During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau, the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate."). Accordingly, the BOP's review of all inmates for possible discretionary transfer to home confinement under Section 3624(c)(2) is separate and distinct from the compassionate release provision under Section 3582(c) of the FSA, and thus, clearly, does not disturb Section 3582(c)'s mandatory exhaustion requirement. And, indeed, the BOP does not have any authority to abrogate the FSA's exhaustion requirement, which can only be done by an act of Congress, for the same reasons why this Court cannot do so.

Second, although the BOP has announced that it is considering all inmates for transfer under Section 3624(c)(2) and the CARES Act, Defendant cites to no new authority, policy or directive that evidences the fact that "the BOP has opted not to offer any" administrative remedies

---

[2]     Instead of relying on cases that involve statutorily mandated exhaustion requirements, Defendant cites to inapposite cases that discuss judicially created exceptions to exhaustion. *See*, *e.g.*, *Washington v. Barr*, 925 F.3d 109, 120-21 (2d Cir. 2019); *Bowen v. City of New York*, 476 U.S. 467, 484 (1986); *Weinberger v. Salfi*, 422 U.S. 749 (1975).

for compassionate release under Section 3582(c). Indeed, the BOP's April 5, 2020 announcement goes on to state that "any inmate who believes they are eligible may request to be referred to Home Confinement and provide a release plan to their Case Manager." Significantly, Defendant's motion nowhere indicates that he has made any request to the BOP for any consideration for relief. The BOP's decision to consider all federal inmates for home confinement under Section 3624(c) does not eliminate the mandatory statutory exhaustion requirement for compassionate release under Section 3582(c).[3]

Third, if I were to accept Defendant's argument that exhaustion is not necessary in light of the BOP efforts under 18 U.S.C. § 3624(c)(2), and thus, a defendant may circumvent the BOP and proceed directly to court under the FSA, it would wholly undermine Congress's intent to permit the agency to conduct an individualized evaluation of an inmate's circumstances. As I have pointed out in *Epstein*, the FSA "includes an exhaustion requirement in recognition of the fact that [the BOP] is frequently in the best position to assess, at least in the first instance, a defendant's conditions, the risk presented to the public by his release, and the adequacy of a release plan." *See United States v. Gross*, No. 15-769, 2020 U.S. Dist. LEXIS 60554, at *5-6 (S.D.N.Y. Apr. 6, 2020) (citations and internal quotations omitted). Thus, the 30-day time period is "consistent with one of the bedrock principles underlying administrative exhaustion—to permit the agency, with its expertise and with its responsibility over the movant, to [first] make a decision . . . ." *Id.*

In short, Defendant has not exhausted his administrative remedies under Section 3582(c)(1)(A). While I acknowledge the very real danger posed by the COVID-19 pandemic, constrained by the existing statutory authority, I cannot waive the exhaustion requirement under the statute. I note that, just within the last week, numerous courts across the country have interpreted Section 3582(c)(1)(A) in a similar fashion as I have done so here. *See Epstein*, No. 14-cr-287, 2020 U.S. Dist. LEXIS 62833 (D.N.J. Apr. 9, 2020) (citing cases).[4] As such, because Defendant has not exhausted his administrative remedies, I do not possess the authority to grant relief. Defendant's motion for compassionate release is denied without prejudice to Defendant to renew his petition when he exhausts all avenues of administrative remedies, or if 30 days lapse after he submits a request to the BOP.

Defendant's Motion for Compassionate Release is **DENIED**.

---

[3]     I note that, based on the language in the BOP's April 5, 2020 announcement, there may be some confusion among inmates (who are typically not lawyers) as to whether the announcement relates to applications for compassionate release under Section 3582(c)(1)(A). The BOP should consider clarifying that inmates who wish to be considered under Section 3582(c)(1)(A) must still comply with the exhaustion requirements of that statute by making a request to the BOP in the first instance.

[4]     I recognize that there are a few district courts that, in light of the COVID-19 pandemic, have waived the FSA's exhaustion requirement. However, I find that these decisions, as explained in *Epstein*, are inconsistent with the text of Section 3582(c)(1)(A) and the precedent of the Third Circuit and Supreme Court.

**SO ORDERED.**

/s/ Freda L. Wolfson
Hon. Freda L. Wolfson
U.S. Chief District Judge