38

don't get caught.  That's just the reality of our lives.

But when they get punished, and there's a publication that

says they're getting punished for it, that is a deterrent

effect, and I'd like the Court to so consider that.

The next question is about rehabilitation.  There

are alternatives to incarceration that would work with

Mr. Basralian that would direct him:  Is he in need of

educational, physical, medical, mental health, training,

things that would put him in the right direction.

One of the things that is important for

Mr. Basralian is that he does have the potential to make

restitution to these individuals, that he can work, and he

can do useful things in the next decade of his life because

he is, statistically speaking, in an actuarial sense, he is

in the last decade; he is rounding the turn and heading for

home, as they say.  And so in that last decade, the question

is, what will he do?  What will be productive?

So, one of the things the Court has to consider is

what will be productive to the victims.  And if the Court

imposes a prison sentence of nearly a decade, then that

makes sure that Mr. Basralian is in for that decade.  It

also makes sure that Mr. Basralian doesn't make any money

for the victims for that decade.  That's just an and/or type

situation:  Either he is making money or he is not.  He will

make 40 cents a day otherwise.  That doesn't make much

39

restitution for them.  That is a relevant factor, and I ask
the Court to consider that.

It is important that the victims get paid back.
One of these victims, CC, did recover approximately
$2.2 million in a settlement through FINRA against -- with
the brokerage house that supervised Mr. Basralian, and that
money, to my understanding, has been paid already, it's due,
I believe, in 30 days --

THE COURT:  That doesn't change the amount of
restitution, because, if it was paid through another entity,
that entity has to be paid back for Mr. Basralian's
wrongdoing.

MR. BRAVERMAN:  If that entity makes a claim for
the money.  Forfeiture doesn't change at all.

THE COURT:  I'd be surprised if they don't make a
claim.

MR. BRAVERMAN:  So far, they haven't, but we'll
see.  If they do, they do.

But that is something that still, of course, needs
to be addressed, and that is something that Mr. Basralian
can do.  He can work.  He has some skills, and he can put
together a career supervised by Probation when he's released
and then make restitution.  That would be a productive use
of his remaining years.

The last point I want to make is something that

40

1    was raised as well by the Court in addressing about the

2    other -- about the victims.  The courts have held that it is

3    an appropriate consideration by a court for a variance for

4    the Defendant's health and the Defendant's age.

5         The Bureau of Prisons in its programming manual

6    takes into consideration the Defendant's age and health.

7    The case law is fairly clear that Defendants at a higher

8    age, that is, septuagenarians and older, which my client is,

9    that they have a lower risk of reoffending, that they have a

10   lower risk of committing an offense while in prison, that

11   they have a lower risk of failing to be supervised and to

12   completing supervision, that they have a greater chance of

13   costing the taxpayers more money when they're in jail, that

14   they have a greater chance of when they leave jail going

15   into rehabilitative things that ultimately might be, like my

16   client, who has a multimillion-dollar judgment against him,

17   paid for by Social Security and/or by Medicare -- Medicaid.

18        So, one of the considerations that I would like

19   the Court to consider in fashioning the length of the

20   sentence is the impact it will have on Mr. Basralian and his

21   health.  It is something that the courts in this circuit and

22   others have been authorized to consider, and I'd ask the

23   Court consider it.  To the extent that he is the same age as

24   some of the victims here, and I list in my letter his

25   medical conditions, and they are listed in the Probation

41

1    report, I don't want to put them on the public record

2    because the press is here, but there are significant issues,

3    and I want to come to the end of my recommendation.

4           I ask the Court to also recommend to the Bureau of

5    Prisons that they must take care of him.  While he's in

6    their custody, they are solely responsible for his health,

7    and I certainly ask the Court, for all the reasons that are

8    listed in both the Probation report and in my letter, that

9    they make sure that they care for him, regardless of his

10    crime.

11           THE COURT:  Counsel, they care for every single

12    person.  Every human being that comes before me, whether

13    they have or they develop health issues, it is their legal

14    responsibility to care for all those that are entrusted into

15    their custody.

16           MR. BRAVERMAN:  We agree.

17           THE COURT:  So that goes out -- it's not a special

18    request.  It's not like the Bureau of Prisons doesn't take

19    care of people unless I request it; it's part of their job.

20    And it's part of my responsibility.

21           So that is not any special additional request I'm

22    going to make to the Bureau of Prisons, that they care for

23    him.  They do that as a matter of course.  They have a

24    medical facility in the prison.  They have very ill people

25    that they take care of, and they take care of them well.

CHARLES P. McGUIRE, C.C.R.

42

1          MR. BRAVERMAN:  And, Judge, with that, the

2     recommendation that I ask the Court to make is to either to

3     Fort Dix or to Otisville.  Both of those places have

4     facilities that are the closest two facilities to his

5     family.  His family, as the Court can see, all his close

6     siblings and his spouse are all in their 70's or older.  I

7     would ask the Court to consider a location that is

8     convenient to them so that they can maintain contact with

9     him and help in his rehabilitation.

10          With that, I'd like to cede the floor to

11     Mr. Willis.

12          THE COURT:  Thank you.

13          Mr. Willis?

14          MR. WILLIS:  Thank you.

15          Thank you, Your Honor, and the Government.

16          I've been practicing in this district, Judge, this

17     September is 50 years.

18          THE COURT:  Congratulations.

19          MR. WILLIS:  Thank you, and hundreds, hundreds of

20     criminal cases over the years.

21          I got a phone call about eight months to a year

22     ago from a friend of mine who had invested a large sum of

23     money with Gary Basralian and had remained his friend and

24     had been very successful in his investments, and told me

25     that our mutual friend, because I had known Gary for many

43

years on a very casual basis in the Millburn-Maplewood

area -- and by the way, I'm not going to be lengthy, and I

appreciate greatly Your Honor's giving me this opportunity.

When Gary came to me and he told me what was going

on, I knew we were in big trouble - big trouble.

It's a very difficult case to handle from the

defense perspective.  First, you can't, and you won't, and I

won't criticize victims.  There are real victims here,

serious consequences to serious people, and not only are the

victims all women, but elderly women.  So the crime itself

is terrible, and it went on for a long period of time.

What I hope to add today at this sentencing is a

little bit about Gary, because I understand that most of the

attention at this sentencing has to be to the victims, and

there are 10 victims.

But Gary is a person, a human being, with all the

frailties and weaknesses that we all suffer from, only

Gary's was apparently a lot more serious.

I want to talk about contrition.  I want to talk

about Gary's mental state.  I want to talk about meeting

Gary.  And I met him many, many times.

He simply didn't know how to handle this ongoing,

lengthy, long struggle in his second marriage.  I have

reports, and Your Honor is aware, that my client has

suffered from a mental disability for many, many, many

44

1    years.   Long before this happened, Gary was seeing a

2    psychologist and a psychiatrist.   He was totally and

3    completely overwhelmed emotionally by the prospects of

4    losing his son from his second marriage.

5           I think, Your Honor, that when someone comes to

6    sentencing and presents you with a medical history and

7    there's a recent history of treatment by a psychiatrist or a

8    psychologist, and the attorney stands up here and argues,

9    that's not what I'm doing.

10          It is evident from the presentence report and from

11   Dr. Latimer and from the psychologist that my client has

12   been ill for a very long time.   The whole way he handled

13   the situation with his ex-wife, the whole way he handled the

14   situation with his son is an indication of a man who was

15   floundering.   As he said in his own words, his moral compass

16   went astray.   Gary has cried in my house.   Gary's present

17   wife has cried many times in my house.

18          I agree with co-counsel, I believe, and I

19   understand extremely well the wonderful relationship that

20   the Court has with the Probation Department, but I do

21   believe, Your Honor, quite frankly, that the presentence

22   report was a very -- not very favorable, to put it mildly,

23   to my client.

24          Gary is sorry.   Gary knows what he did was wrong.

25   And Gary is willing to pay a price.

45

1          The question is, what's the appropriate price for

2    a man who is going to be 73 years old, in poor physical

3    condition and in very poor mental health?

4          Don't be surprised if Gary's bravado and ability

5    to stand up and address you is going to disguise the depth

6    of the pain and suffering that Gary has recognized.  He is

7    aware that he has hurt people.  He's aware that he's hurt

8    himself, his wife, his children, and his incredibly

9    productive family.  And I know that Your Honor sees a lot of

10   people in the courthouse, but of all of the children of

11   Dr. Basralian, Gary was, let's say, as written by the

12   psychologist who did the workup on the custody issue for

13   their son, Gary has been suffering from low esteem and

14   serious deep depression, and you have to give some

15   consideration, Your Honor, to my client's struggles that

16   he's gone through.

17         I know this is bad.  I know it is.  And I know

18   that punishment is coming.  But what would be an appropriate

19   punishment?

20         The Government stands here and asks you to put a

21   73-year-old man in jail for 97 months.  Is that a death

22   sentence?  I don't know.  I don't know.  You're putting a

23   man who's physically, obviously, ill, and mentally ill in

24   jail basically for the rest of his adult life.

25         I ask you to temper your sentence.  I know that

46

1   Your Honor has a duty and an obligation to protect victims

2   in this system.  But you also have a responsibility not to

3   run with the crowd that says Gary's just a bad, bad guy.

4          Gary is a human being, and his frailties are

5   obvious.  He is hurting.  He is in pain.  He has been

6   suffering night after night after night.  He doesn't sleep.

7   He comes to my house and sits and cries over what he did,

8   and the shame that he has brought to his family and his

9   loved ones that are here.  Everyone is in a state of shock

10   that Gary could involve himself in something like this.

11          So I ask you, and finalize my comments -- again, I

12   thank you for giving me this opportunity, and I would like

13   to ask the Court to temper your sentence to a moderate

14   sentence of 30 months.

15          I agree with Mr. Braverman and I believe that

16   there is, even in a case like this, mitigating factors that

17   weigh in favor of lessening the sentence.  Please don't give

18   him a sentence where there's no hope and there's no future.

19          I thank you so much for giving me this

20   opportunity.  Thank you, Judge.

21          THE COURT:  Thank you, Mr. Willis.

22          Mr. Basralian, you don't have to speak.  This is

23   your opportunity to speak if you would like to do so.

24          THE DEFENDANT:  I would.

25          THE COURT:  Okay.  You can be heard.

47

1          THE DEFENDANT:  Can I come up, or --

2          THE COURT:  No, you can stay there.

3          THE DEFENDANT:  Can I stand?

4          THE COURT:  Yes.

5          THE DEFENDANT:  These are difficult words, Your

6     Honor.  I was wrong, and regardless of my personal

7     circumstances, the clients, they deserved much better.  My

8     clients, my friends, they deserved better.

9          We all rely on our professionals, whoever they

10    are, doctors, lawyers, brokers.  We need to trust them.  And

11    I betrayed that trust.  I actually abused that trust.  And

12    for that, I don't know how to say I'm sorry.

13          And I will never reoffend.  I have caused people I

14    care for an intolerable amount of pain, as Mr. Willis said,

15    and I have destroyed my life and my name, and I will have

16    that to remember every day of the rest of my life.

17          I would like to repeat what both Mr. Braverman and

18    Mr. Willis said is, I want to make restitution.  I plan to

19    make restitution.  I've got a few years of work left in me,

20    and it's both appropriate and it's my wish and desire to

21    make sure that I do make restitution in any form and every

22    form.  My clients deserve it, and I want to do that.

23          Lastly, to my family, my friends, you know, it's

24    -- especially my wife, I apologize to my wife, Soraya, the

25    love of my life.  After the death of her first husband --

CHARLES P. McGUIRE, C.C.R.

48

1 she nursed him for years, and gave him a death with dignity,

2 and then she found me and gave me a life with dignity, and

3 what did I give back to her?

4    She's a perfect person, and I would miss her every

5 morning and every day and every sunset with her.  And I only

6 ask that you allow me at some point to live out my days with

7 her.

8    And again, my sincerest apologies to everyone.  I

9 don't know what else to say, Your Honor.  I truly am sorry.

10    And I appreciate this opportunity.

11    Thank you, Your Honor.

12    THE COURT:  Okay.  Thank you.

13    I'm going to take a two-minute break, and we'll be

14 back.

15    THE COURT CLERK:  All rise.

16  (Recess taken)

17  (Defendant present)

18    THE COURT CLERK:  All rise.

19    THE COURT:  Everyone can be seated.

20    Okay.  Mr. Basralian, you can stay standing.

21    So, I want to have a conversation with you today

22 before I impose sentence and just respond to some of the

23 things that were said, and give you some of the reasons, I

24 think it's important for you to know the reasons why I'm

25 imposing this sentence that I'm going to impose.

CHARLES P. McGUIRE, C.C.R.

49

1   And you touched on it, and I thought your remarks
2 were well said:  But I want you to really think about the
3 victims and have empathy for the victims.
4   I know one of your lawyers stated that you have
5 difficulty sleeping at night, and you have tears, and mental
6 health issues that you've had that you've struggled with
7 throughout your life, for which I take account.
8   But the victims, some of them were your friends,
9 who you took advantage of, older women, some of them
10 widowed, some of them frail, all of whom trusted you deeply,
11 and their suffering is not just because they lost money, but
12 it's because of their sadness that they were betrayed by a
13 friend.
14   And that is one of the deepest pains of life, to
15 be betrayed by friends, and to have it happen at the end of
16 a long life well lived, when you have your assets depleted
17 and have to change your lifestyle in your 70's, your 80's,
18 or you have to keep working when you're tired and you don't
19 want to work anymore, or you have to move to a different
20 place because you can't afford the upkeep on a house.
21   So this isn't -- for me, what makes this case so
22 difficult, and should be for you, this isn't a big public
23 company that, although those wrongs are equally criminal if
24 it's from an entity, but the crimes here really touch human
25 lives, people who are your friends, who trusted you, who

50

were vulnerable, who are elderly, who are senior citizens.
And so it should touch a different chord with you, I hope,
that, moving forward, and spending your life for the
foreseeable future incarcerated, to really focus on those
people, and be reminded that they are the reason why you
stand before me today:  That you breached their trust, that
you broke the law, and you did it to a high degree in terms
of loss here.

I mean, part of the reason why we're here is
because the loss amount that I agreed to the stipulation was
between 1.5 and $3.5 million.  So it wasn't like a small
amount was taken from a lot of small people, but they were
life savings, and there was a lot of money that you
diverted.  Probation has reported the loss to be even
greater than the $3.5 million.

I've accepted the stipulated plea, and I will
accept it for the purposes of this sentence today.  But I
want you to think about that.

So, the Federal law, 18 U.S.C. 3553, requires me
to look at a lot of factors.  And I look at your whole life,
and you started this life with, you know, good faith.  You
came from a good family, and you had opportunities to go to
college, to a good college, and to have a good job, and to
be able to care for your family.  You are not someone who
came up in a way that I could look at your past and say that

51

1    your early life or some trauma happened to you as a child,

2    really - you know, you dropped out of the sixth grade, or

3    you had addiction as a child.  You didn't have any of those

4    factors.  You came as a person who had the benefit of a

5    better life than a lot of people do.

6            That's part of your story.  I know there was a lot

7    of talking about the difficulty suffered through your second

8    marriage, and I want you to know that I accepted your

9    lawyers' arguments, I accept them, that that put a

10   tremendous amount of emotional strain on you, and that

11   trying to figure out that problem was the reason why, not an

12   excuse, more of an explanation of what you did.

13           I accept all that.  It's not an excuse.  It's not

14   a justification.  It's your explanation, and I accept it.

15           But it certainly doesn't justify anything at all.

16   There are people in this country every day that go through

17   difficult divorces with child-custody issues.  You read

18   about them in the paper.  There's not a person in the

19   courtroom that doesn't know someone personally who's been

20   affected by the pain of broken marriages and divorce.  It's

21   certainly an explanation.  I accept that it was difficult

22   for you.  I accept that you used the money to try to help

23   that situation.  But it certainly doesn't come close to the

24   kind of issue that I would say justifies or is a reason for

25   anything that happened, or that would change my view of what

52

1    happened.  But I do accept your version that it was a very

2    difficult time for you, and you did what you did to try to

3    fix those issues, those family issues.

4           And I also take into account that this is -- I

5    went back and I looked at the plea and the indictment, and

6    this was a series of dishonesty that went on for about a

7    decade.  It went on for a long time.  So there were times

8    when you could have stopped it, there are times when you

9    could have owned up to it, and you didn't, and you continued

10   to do it, and you continued until it was discovered, that it

11   ultimately stopped.

12          So I take into account all those factors.  I take

13   into account that -- the only thing that makes me even

14   consider something slightly below the Guideline level is

15   your age, and, as Mr. Willis pointed out, your history of

16   mental health and your history of some physical problems.

17   That's the only issue.  The Guidelines serve a purpose, and

18   one of the things is to send a message, to have a deterrent

19   effect, that, as you said, you were in a position of trust,

20   great trust; there's a lot of people that trust that doesn't

21   go as deep as yours did.  You're not just someone that they

22   had a casual relationship with, who was a tax adviser, like

23   most people go to H & R Block and get someone to do your tax

24   returns.  You were someone that was able to do what you were

25   able to do so broadly and so deeply because you took

53

1    advantage of trust.

2           And there needs to be a sentence that reflects the

3    need for deterrence, although sufficient but not greater

4    than necessary to satisfy the 3553 factors.  That is still

5    something that I find very important:  To impose a sentence

6    that has the effect of deterrence, and to protect the

7    public.  Although I take you at your word that at 71 or 72

8    that you are not likely to engage in this kind of crime

9    again, that the public still needs to be protected from what

10   has happened, and to make sure it doesn't happen again.

11          I appreciate your ability to provide restitution

12   to any victims, and that should be your goal no matter what

13   happens when you return from prison, because nothing will go

14   further with repairing the broken trust that you have with

15   these former friends and clients than to try to make any

16   amount you can towards making their lives better and

17   relieving their anxiety, and to do that as your number-one

18   goal, not as a goal second to yourself.  They come first.

19   There will be a judgment against you that I'm sure you will

20   spend the rest of your life trying to repay, and that should

21   be your number-one, your absolute, number-one goal, which is

22   to make whole the victims for what has happened here.

23          So, as I said, I made a Guidelines calculation.

24   That calculation is between 78 and 97 months.  That's the

25   presumption.  The Government is asking for the highest level

CHARLES P. McGUIRE, C.C.R.

54

1    of the Guideline range, and, while I completely understand

2    and appreciate why they would do that, given the breadth of

3    the loss here, and given the amount of victims, and given

4    the circumstances in this case, I do take into account your

5    age.  You're going to be 73 years old, so a sentence in that

6    that range would be very, very high in terms of, it would be

7    like a seven-, eight-year sentence, and I'm satisfied that

8    that's not appropriate.

9          The lowest end of the range is 78 months, and

10    that's, roughly, almost seven years, and given your age,

11    given your history of depression, mental health and physical

12    health, I'm going to depart slightly from that range, but

13    not too slightly, with the hopes that you will be able to

14    return to society and that you will be able to work and to

15    some degree pay back some of the restitution.

16          So that's what I think is appropriate here.  I'm

17    not inclined to depart greatly from the Guidelines, but

18    simply based on the totality of your circumstances, and your

19    age, your history of mental health, depression, your

20    physical health, and I balance that against the Guideline

21    range, the appropriateness of the range, the fact that your

22    range is where it is because of two very important

23    enhancements, the one for vulnerable victims and the second

24    one that we also discussed today --

25          The second one was?

55

1          MS. HOWARD:   Substantial financial hardship.

2          THE COURT:   -- substantial financial hardship.

3   But for those enhancements, the range would be a lot less.

4   But I'm satisfied that those enhancements are not close

5   calls.  They are real.  They have a place in the Guidelines

6   for the kind of offense and the offender and what happened

7   here with respect to you.

8          So, I'm not inclined to go down to that level,

9   which would be a 24.  If I didn't have those enhancements,

10  it would put you in a 51 to 63 range.  I'm satisfied that a

11  range more in the range of one -- the lowest end of one

12  range, so if you were at a 27, the range would be 70 to 87,

13  and given my view that there are grounds here for a slight

14  departure, I am going to sentence you to the low end of that

15  range, which would be a sentence of 70 months.

16          So I am hereby committing you to the Bureau of

17  Prisons for a term of 70 months on Count One and 60 months

18  on Count Two, all to be served concurrently.

19          Upon release, you're going to be on supervised

20  release for three years.

21          Within 72 hours, you must report to Probation.

22          While on release, you can't commit a crime, have a

23  gun, and must comply with all other conditions.

24          You're excused from mandatory drug testing.  You

25  will have to give one initial drug test.

56

1          Given everything that was discussed today and all

2     the findings of the Court, I'm going to impose the following

3     conditions.

4          New debt restrictions - you will be prohibited

5     from incurring new debt without Probation's approval.

6          You will have to make full financial disclosure.

7          There will be mental health treatment.

8          There will be occupational restrictions.

9     Specifically, you cannot work as a financial investment

10    consultant.  You must consult with Probation with respect to

11    any other jobs and any other employment, whether

12    independent, entrepreneurial, or freelance employment.  All

13    employment has to be approved by Probation.

14         I'm ordering restitution in the amount of

15    $3,712,593.63, payable to the Clerk of the Court in Trenton.

16    Restitution is due immediately.  It is recommended that you

17    participate in the Bureau of Prisons's Inmate Financial

18    Responsibility Program for the balance of your time

19    incarcerated.

20         Anything further?

21         MS. HOWARD:  Your Honor, yes, just, the forfeiture

22    order in the amount of $3,712,595.63, I can submit that to

23    the Court immediately upon returning to my office.

24         THE COURT:  Okay.  Anything further?

25         MR. BRAVERMAN:  Judge, two things.

CHARLES P. McGUIRE, C.C.R.

57

1          The first one is, first, a surrender date for

2     Mr. Basralian.  I'd ask the Court to consider a surrender

3     date.  He has been otherwise completely compliant.

4          THE COURT:  He is on bail.  The Bureau of Prisons

5     will send him a letter, as is the normal course.

6          MR. BRAVERMAN:  Very good, Judge.

7          The only other issue -- there are two others.  One

8     is that in terms of the restitution, as I alerted the Court,

9     there was -- one of the victims received compensation, which

10    will reduce the restitution amount, so I would object to

11    that restitution amount, and considering that we

12    stipulated --

13         THE COURT:  You can brief that to me on the

14    restitution.

15         MR. BRAVERMAN:  Very good.

16         THE COURT:  It's my understanding that restitution

17    is restitution, and it will be distributed equally to all

18    the victims.  If you want to brief it or talk about it with

19    the U.S. Attorney, you can, but I'm not changing the

20    restitution amount absent some authority to do so.

21         I should also tell Mr. Basralian that you have a

22    right to appeal this sentence, and if you cannot file a

23    notice of appeal, the Court will file one for you on your

24    behalf.  Okay?

25         Thank you.  Anything further?

CHARLES P. McGUIRE, C.C.R.

58

1          MR. BRAVERMAN:  Actually, there was also a $200

2     special assessment.

3          THE COURT:  A $200 special assessment as well.

4          I don't have the third page of my language.  I

5     just misplaced it.  And there will be a -- let me just

6     double-check and make sure I have all the language from the

7     end of the sentence.

8          So, restitution must satisfy the amount due in

9     monthly installments.  Once he's released from

10    incarceration, monthly restitution shall be paid in monthly

11    installments of not less than $200, to commence 30 days

12    after confinement.

13         He must notify the U.S. Attorney within 30 days of

14    any change of mailing.

15         I'll waive the fine.

16         A special assessment of $200, one for each count,

17    which is due immediately.

18         And you will be asked to surrender to the

19    institution designated by the Bureau of Prisons.

20         I recommend that they designate a facility for

21    service of your sentence as near as possible to your home

22    address.

23         We talked about that he has a right to an appeal.

24    He can request the Clerk of the Court to file a notice on

25    his behalf if he cannot afford to pay, and we have the

59

1 forfeiture issue involved.

2    Anything further?

3    MR. BRAVERMAN:  Judge, I will submit papers on the

4 restitution and also on the forfeiture, as well, Judge, and

5 do them all together --

6    THE COURT:  Thank you.

7    MR. BRAVERMAN:  -- if I can.

8    THE COURT CLERK:  All rise.

9   (Matter concluded)

10

11

12   Pursuant to Section 753, Title 28, United States

13   Code, the following transcript is certified to be

14   an accurate record as taken stenographically in

15   the above entitled proceedings.

16

17         _____

18         s/CHARLES P. McGUIRE, C.C.R.

19

20

21

22

23

24

25

CHARLES P. McGUIRE, C.C.R.

# EXHIBIT N

AO 245B (Mod. D/NJ 12/06) Sheet 1 - Judgment in a Criminal Case

# UNITED STATES DISTRICT COURT
## District of New Jersey

UNITED STATES OF AMERICA

    v.

                             **CASE NUMBER   2:18-CR-00515-MCA-1**

GARY BASRALIAN

    Defendant.

### JUDGMENT IN A CRIMINAL CASE
### (For Offenses Committed On or After November 1, 1987)

The defendant, GARY BASRALIAN, was represented by SAMUEL M. BRAVERMAN & PETER R. WILLIS, ESQS.

The defendant pleaded guilty to count(s) 1,2 of the INFORMATION on 8/29/2018.   Accordingly, the court has adjudicated that the defendant is guilty of the following offense(s):

| Title & Section | Nature of Offense | Date of Offense | Count Number(s) |
|---|---|---|---|
| 18:1343 | WIRE FRAUD | 7/2007-11/2017 | 1 |
| 15:80b-6 and 80b-17 | INVESTEMENT ADVISER FRAUD | 7/2007-8/2017 | 2 |

As pronounced on September 06, 2019, the defendant is sentenced as provided in pages 2 through 8 of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

It is ordered that the defendant must pay to the United States a special assessment of $200.00 for count(s) 1,2, which shall be due immediately.  Said special assessment shall be made payable to the Clerk, U.S. District Court.

It is further ordered that the defendant must notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of any material change in economic circumstances.

Signed this 10th day of September, 2019.

Hon. Madeline Cox Arleo
U.S. District Judge

AO 245B (Mod. D/NJ 12/06) Sheet 2 - Imprisonment

Defendant: GARY BASRALIAN
Case Number: 2:18-CR-00515-MCA-1

Judgment - Page 2 of 8

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of 70 months, consisting of 70 months on Count 1 and 60 months on Count 2, all to be served concurrently.

The Court makes the following recommendations to the Bureau of Prisons: Facility close to defendant's home address.

The defendant will surrender for service of sentence at the institution designated by the Bureau of Prisons on date to be designated by the Bureau of Prisons.

## RETURN

I have executed this Judgment as follows:

_____

_____

_____

Defendant delivered on _____ To _____
At _____, with a certified copy of this Judgment.

_____
United States Marshal

By _____
Deputy Marshal

AO 245B (Mod. D/NJ 12/08) Sheet 3 - Supervised Release

Judgment - Page 3 of 6

Defendant: GARY BASRALIAN
Case Number: 2:18-CR-00515-MCA-1

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of 3 years on Count 1 and 2, all such terms to run concurrently.

Within 72 hours of release from custody of the Bureau of Prisons, you must report in person to the Probation Office in the district to which you are released.

While on supervised release, you must not commit another federal, state, or local crime, must refrain from any unlawful use of a controlled substance and must comply with the mandatory and standard conditions that have been adopted by this court as set forth below.

Based on information presented, you are excused from the mandatory drug testing provision, however, you may be requested to submit to drug testing during the period of supervision if the probation officer determines a risk of substance abuse.

You must cooperate in the collection of DNA as directed by the probation officer

If this judgment imposes a fine, special assessment, costs, or restitution obligation, it is a condition of supervised release that you pay any such fine, assessments, costs, and restitution that remains unpaid at the commencement of the term of supervised release.

You must comply with the following special conditions:

### FINANCIAL DISCLOSURE

Upon request, you must provide the U.S. Probation Office with full disclosure of your financial records, including co-mingled income, expenses, assets and liabilities, to include yearly income tax returns. With the exception of the financial accounts reported and noted within the presentence report, you are prohibited from maintaining and/or opening any additional individual and/or joint checking, savings, or other financial accounts, for either personal or business purposes, without the knowledge and approval of the U.S. Probation Office. You must cooperate with the U.S. Probation Officer in the investigation of your financial dealings and must provide truthful monthly statements of your income. You must cooperate in the signing of any authorization to release information forms permitting the U.S. Probation Office access to your financial records.

### MENTAL HEALTH TREATMENT

You must undergo treatment in a mental health program approved by the U.S. Probation Office until discharged by the Court. As necessary, said treatment may also encompass treatment for gambling, domestic violence and/or anger management, as approved by the U.S. Probation Office, until discharged by the Court. The U.S. Probation Office will supervise your compliance with this condition.

### NEW DEBT RESTRICTIONS

You are prohibited from incurring any new credit charges, opening additional lines of credit, or incurring any new monetary loan, obligation, or debt, by whatever name known, without the approval of the U.S. Probation Office. You must not encumber or liquidate interest in any assets unless it is in direct service of the fine and/or restitution obligation or otherwise has the expressed approval of the Court.

### SELF-EMPLOYMENT/BUSINESS DISCLOSURE

You must cooperate with the U.S. Probation Office in the investigation and approval of any position of self-employment, including any independent, entrepreneurial, or freelance employment or business activity. If approved for self-employment, you must provide the U.S. Probation Office with full disclosure of your self-employment and other business records, including, but not limited to, all of the records identified in the Probation Form 48F (Request for Self Employment Records), or as otherwise requested by the U.S. Probation Office.

AO 245B (Mod. D/NJ 12/08) Sheet 3 - Supervised Release

Judgment – Page 4 of 8

**Defendant: GARY BASRALIAN**
**Case Number: 2:18-CR-00515-MCA-1**

## OCCUPATIONAL RESTRICTIONS

As a further special condition of supervised release, you must refrain from refrain from employment as a financial or investment consultant or any position that gives you access to, or control over, any public or private assets.

AO 245B (Mod. D/NJ 12/06) Sheet 3a - Supervised Release

Defendant: GARY BASRALIAN
Case Number: 2:18-CR-00515-MCA-1

Judgment - Page 5 of 8

# STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1) You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.

2) After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.

3) You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.

4) You must answer truthfully the questions asked by your probation officer.

5) You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

6) You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.

7) You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have fulltime employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

8) You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.

9) If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.

10) You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).

11) You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.

12) If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.

AO 245B (Mod. D/NJ 12/08) Sheet 3a - Supervised Release

Defendant: GARY BASRALIAN
Case Number: 2:18-CR-00515-MCA-1

Judgment - Page 6 of 8

## STANDARD CONDITIONS OF SUPERVISION

13) You must follow the instructions of the probation officer related to the conditions of supervision.

---

*For Official Use Only - - - U.S. Probation Office*

Upon a finding of a violation of probation or supervised release, I understand that the Court may (1) revoke supervision or (2) extend the term of supervision and/or modify the conditions of supervision.

These conditions have been read to me. I fully understand the conditions, and have been provided a copy of them.

You shall carry out all rules, in addition to the above, as prescribed by the Chief U.S. Probation Officer, or any of his associate Probation Officers.

(Signed)_____

Defendant                                          Date


_____

U.S. Probation Officer/Designated Witness          Date

AO 245B (Mod. D/NJ 12/05) Sheet 6 - Restitution and Forfeiture

Defendant: GARY BASRALIAN
Case Number: 2:18-CR-00515-MCA-1

Judgment - Page 7 of 8

## RESTITUTION AND FORFEITURE

### RESTITUTION

The defendant shall make restitution in the amount of $3,712,595.63. Payments should be made payable to the **U.S. Treasury** and mailed to Clerk, U.S.D.C., 402 East State Street, Rm 2020, Trenton, New Jersey 08608, for proportionate distribution to the following victims in the following amounts:

See attached list

The restitution is due immediately. It is recommended that you participate in the Bureau of Prisons Inmate Financial Responsibility Program (IFRP). If you participate in the IFRP, the restitution will be paid from those funds at a rate equivalent to $25 every 3 months. In the event the entire restitution is not paid prior to the commencement of supervision, you must satisfy the amount due in monthly installments of no less than $200, to commence 30 days after release from confinement.

You must notify the United States Attorney for this district within 30 days of any change of mailing or residence address that occurs while any portion of the restitution remains unpaid.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) JVTA assessment, (8) penalties, and (9) costs, including cost of prosecution and court costs.

AO 245B (Mod. D/NJ 12/08) Sheet 8 - Restitution and Forfeiture

Defendant: GARY BASRALIAN
Case Number: 2:18-CR-00515-MCA-1

Judgment - Page 8 of 8

## RESTITUTION AND FORFEITURE

### FORFEITURE

The defendant is ordered to forfeit the following property to the United States:

Judgement of Forfeiture signed on 9/6/19 (document 21)

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) JVTA assessment, (8) penalties, and (9) costs, including cost of prosecution and court costs.

# EXHIBIT O

BP-A0148
JUNE 10

INMATE REQUEST TO STAFF CDFRM

U.S. DEPARTMENT OF JUSTICE

FEDERAL BUREAU OF PRISONS

| TO:(Name and Title of Staff Member) Warden David E. Ortiz | DATE: March 28, 2020 |
|---|---|
| FROM: Gary Basralian | REGISTER NO.: 71610-050 |
| WORK ASSIGNMENT: Camp Librarian | UNIT:. Camp - B |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.

Attorney General William Barr has directed the Bureau of Prisons to immediately release elderly, non-violent inmates who are most susceptible to the COVID-19 virus. He also indicated the use of enhanced compassionate release to affect said release faster.

I am 73 years old and diagnosed by medical staff with chronic coronary artery disease in addition to suffering with chronic gastritis and scarred lungs. I also underwent triple by-pass surgery and an aortic valve replacement; my immune system is subject to compromise.

As such, I am requesting immediate release to home confinement for health and compassionate reasons.

Respectfully submitted
Gary Basralian

(Do not write below this line)

DISPOSITION: MK-KNIGHT -CASE MANAGER

C 1:45 pm 3/30/2020 I gave this to Ms KNIGHT. WHOSE INTEREST WAS BASICALLY ZERO AND INSTRUCTED ME TO PUT THIS FORM ON THE TOP OF HER MAIL PILE. IT IS SUPPOSED TO GO TO THE WARDENS

| Signature Staff Member | Date |
|---|---|
| | |

Record Copy - File; Copy - Inmate

PDF

Prescribed by P5511

This form replaces BP-148.070 dated Oct 86 and BP-S148.070 APR 94

FILE IN SECTION 6 UNLESS APPROPRIATE FOR PRIVACY FOLDER

SECTION 6

# EXHIBIT P

# EXHIBIT Q

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Criminal Action No. 18-515 |
| GARY BASRALIAN, | ORDER |
| *Defendant.* | |

THIS MATTER comes before the Court by way of Defendant Gary Basralian's ("Defendant") Motion for Reduction of Sentence and Compassionate Release, under the First Step Act (the "FSA"), 18 U.S.C. § 3582(c)(1)(A) ("Section 3582(c)(1)(A)"), ECF No. 31 ("Def. Br.");

and it appearing that the United States of America ("the Government") opposes Defendant's Motion, ECF No. 32 ("Gov. Br.");

and it appearing that Defendant is currently incarcerated at FCI Fort Dix where he has served approximately six months of a seventy-month sentence for wire fraud in violation of 18 U.S.C. § 1343 and investment advisor fraud in violation of 15 U.S.C. §§ 80b-6, 80b-17, Gov. Br. at 1-2;

and it appearing that on April 30, 2020, Defendant filed the instant Motion, seeking reduction of his sentence or transfer to home confinement in light of the novel coronavirus 2019 ("COVID-19") pandemic, see generally Def. Br. at 1-2, 20;

and it appearing that the Government argues the Court should deny Defendant's Motion, in part, because Defendant has not fully exhausted his administrative remedies, Gov. Br. at 3-7;

and it appearing that Section 3582(c)(1)(A) of the FSA authorizes courts to reduce criminal sentences upon finding "extraordinary and compelling reasons" but only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons [("BOP")] to

1

bring a motion on the defendant's behalf" or thirty days has elapsed from the facility warden's receipt of the defendant's request, 18 U.S.C. § 3582(c)(1)(A);

and it appearing that the Third Circuit recently found that "strict compliance" with Section 3582(c)(1)(A)'s exhaustion requirement is important, and a defendant's failure to adhere to it "presents a glaring roadblock foreclosing compassionate release," United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020);

and it appearing that here, Defendant has not exhausted his administrative remedies,[1] and thus, at this juncture, the Court lacks authority to decide Defendant's Motion, see United States v. Epstein, No. 14-487, 2020 WL 1808616, at *3-5 (D.N.J. Apr. 9, 2020) (holding that the court does not "possess authority to grant relief" under Section 3582(c)(1)(A) where defendant failed to exhaust administrative remedies); Durante v. United States, No. 16-8949, 2020 WL 2520280, at *1 (D.N.J. May 18, 2020) (noting that defendant originally moved under Section 3582(c)(1)(A) for compassionate release but the court denied that motion for failure to exhaust administrative remedies); Cordaro v. Finley, No. 10-75, 2020 WL 2084960, at *1 (M.D. Pa. Apr. 30, 2020) (observing that a court is without jurisdiction to consider a Section 3582(c)(1)(A) motion where the movant has not exhausted the statute's "mandatory" administrative remedies);

IT IS on this 8th day of June, 2020;

---

[1] Defendant alleges he submitted a request for compassionate release, which the BOP verbally denied. Def. Br. at 6 & Ex. A. Upon review, this request appears to be one for home confinement—not one for sentence reduction—governed by a separate statutory provision, 18 U.S.C. § 3624(c)(2). See Ex. A (requesting "immediate release to home confinement for health and compassionate reasons" based on Attorney General William Barr's directive that the BOP consider release for certain inmates susceptible to COVID-19). Such requests do not satisfy Section 3582(c)(1)(A)'s exhaustion requirement for sentence-reduction motions. See United States v. Viteri, No. 19-44, ECF No. 32, at *4-5 (D.N.J. Apr. 10, 2020).

ORDERED that the Defendant's Motion for Reduction of Sentence and Compassionate

Release, ECF No. 31, is DENIED without prejudice.[2]  Defendant may file a renewed motion upon

his exhaustion of administrative remedies, or if thirty days lapse after he submits a request for

sentence reduction to the BOP.

/s Madeline Cox Arleo
MADELINE COX ARLEO
UNITED STATES DISTRICT JUDGE

---

[2] Although the Court denies Defendant's Motion without prejudice, a few observations are worthwhile.  First, should Defendant exhaust his administrative remedies, it is likely the Court will lack jurisdiction to grant immediate relief based on any renewed motion because Defendant's appeal of the Court's sentencing decision is pending before the Third Circuit.  See Raia, 954 F.3d at 596-97 (observing that remand would allow the district court, which found it lacked jurisdiction, to consider the motion but declining to do so based on defendant's failure to exhaust administrative remedies); Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58 (1982) ("The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."); see also Fed. R. Crim. P. 37 (explaining that district court who lacks authority over a timely motion for relief based on a pending appeal may "(1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue").  Second, without much context, the Government disclosed that, at some point, FCI Fort Dix tested Defendant, and Defendant tested positive for COVID-19.  Gov. Br. at 2.  Neither party has provided any further information about Defendant's present health condition, and Defendant has not complained that the BOP has failed to address his medical needs.  This information would certainly impact the Court's merits analysis whether compelling circumstances warrant a reduction in Defendant's sentence.

# EXHIBIT R

Basralian, Gary
Register Number: 71610-050
Unit: ~~6685~~

### INMATE REQUEST TO STAFF RESPONSE

This is in response to your request for consideration for
Compassionate Release/Reduction in Sentence (RIS) in accordance with
18 U.S.C. §3582(c)(1)(A) and Program Statement 5050.50, Compassionate
Release/Reduction in Sentence, Procedures for Implementation, 18 U.S.C.
§3582(c)(1)(A) and §4205(g).

In accordance with Program Statement 5050.50, Compassionate
Release/Reduction in Sentence, Procedures for Implementation, 18 U.S.C.
§3582(c)(1)(A) and §4205(g), an inmate may initiate a request for
consideration only when there are particularly extraordinary or
compelling circumstances which could not have been foreseen by the
court at the time of sentencing.

The BOP has interpreted the extraordinary and compelling circumstances
in a number of categories outlined in policy. BOP Program Statement No
5050.50, Compassionate Release/Reduction in Sentence: Procedures for
Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g), provides
guidance on the types of circumstances that present extraordinary or
compelling reasons, such as the inmate's terminal medical condition;
debilitated medical condition; status as a "new law" elderly inmate,
an elderly inmate with medical conditions, or an "other elderly
inmate"; the death or incapacitation of the family member caregiver of
the inmate's child; or the incapacitation of the inmate's spouse or
registered partner.

Because your request did not seek release under any of the enumerated
categories, it could not be considered. If you still wish to be
considered for Compassionate Release/RIS, please re-submit your
request with the one specific category.

If you are dissatisfied with this response, you may appeal the
decision through the Administrative Remedy process.


M. Bridges                              6/25/2020
Executive Assistant                     Date

# EXHIBIT S

## Tamra Katcher

| | |
|---|---|
| **From:** | BASRALIAN GARY (71610050) |
| **Sent Date:** | Thursday, November 12, 2020 6:07 PM |
| **To:** | tkatcher@remlawgroup.com |
| **Subject:** | RE: medications |

RE: Cardiologist, I believe you have a couple of the forms I submitted ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

When I got here a year ago, I was allowed to keep my Wellbutrin until it ran out after which they stopped giving it to me as it did not meet their formulary. They wanted to give me another medicine and I was reluctant to take it because they couldn't assure me that the sife effects wouldn't be bad. I had to wean myself off the Wellbutrin, which doesn't stay in the body that long but I had been taking it since around 2002 and the dosage had been upped over that period. I managed without it by upping my caffeine intact and tylenol for any headaches. Comes and goes.  I am not taking the sildenafil citrate as they won't give it here.
I take daily the Atorvastatin which was up from 40 to 80 mg daily by my own cardiologist after he saw my blood work results. I still take the metoprolol 25 mg twice daily and a 81 mg aspirin. Vitamin supplements as well.

I'm to take 800 mg of Amoxycillan before any dental treatment but they resist giving it to me - said the dental tech - but I did get an Rx from my own cardiologist. The purpose of the med is to protect my new heart valve from any blood infection.

I'm not due for a regular dental check up but had requested twice to see the dentist as I lost a cap and a tooth that had root canal is exposed.



>

11/12/2020